E-FILED
Friday, 27 January, 2017 11:53:31 AM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | | |
|---|---|---|
| Steven Cole, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 15-1292 |
| | ) | |
| Detective Shawn Meeks, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

### ORDER

This matter is now before the Court on Defendants Detective Shawn Meeks, *et al.* ("Defendants"), Motion to Dismiss Counts II and III of Plaintiff's Second Amended Complaint (ECF No. 51). For the reasons set forth below, the Court GRANTS Defendants' motion.

### FACTUAL BACKGROUND

Because it is at the motion to dismiss stage, the Court takes all of its factual background from Plaintiff's Second Amended Complaint ("SAC") (ECF No. 48). Karissa Miles ("Miles") met Janet Cole ("Cole") in 2005. Miles's daughter, M.A., was born on April 20, 2007. M.A. occasionally suffered from constipation and, when she did, she would become fussy and "cry and scream." In order to help her daughter defecate, Miles would perform a maneuver in which she would move M.A.'s legs and "spread[] her butt apart." Miles met Plaintiff Steven Cole ("Plaintiff") in May 2008. Plaintiff and Cole regularly babysat M.A. from that point forward.

On January 7, 2009, M.A. was again suffering from constipation. On that day, Miles and a friend dropped M.A. and Miles's car off at Plaintiff's and Cole's. At approximately 2:15 or 2:30pm, Miles changed M.A.'s diaper, put her down for a nap, and left for work.

When M.A. woke from her nap at approximately 5:30pm, Cole changed her diaper. She noticed a "bad" bowel movement and that M.A.'s rear end and anus were red. M.A. said "owie" and flinched when Cole cleaned her with a wipe. Cole put Vaseline on the sore areas. She did not tell Plaintiff about the sore areas but later did tell Miles. At approximately 9:20 or 9:30pm, Plaintiff and Cole drove Miles and M.A. home. That night, M.A. was again constipated and suffering from fecal impaction. After having had at least six beers, Miles performed her maneuver to help relieve M.A.'s impaction as she had in the past. Miles allegedly caused injuries to M.A.'s vaginal, perineal, and anal areas. That evening, Miles had a sixty-minute phone call with a friend about vaginal injuries.

On January 8, 2009, Miles and her roommate John Duncan ("Duncan"), a nursing assistant, took M.A. to the emergency room, where she was admitted and underwent surgery for injuries to her vaginal and anal areas. Defendant Detective Shawn Meeks ("Meeks") conducted the investigation as to M.A.'s injuries. After the surgery and on or about January 8, 2009, Meeks spoke with Miles and Duncan; Duncan told Meeks he had examined M.A. with latex gloves prior to taking her to the hospital. Hospital personnel informed Meeks M.A.'s injuries could have been the result of an accident or could have occurred as little as two hours before she arrived at the hospital.

Meeks subsequently conducted a search of Miles's and Duncan's home, where Meeks observed filthy conditions, including a pile of dog feces in the bedroom in which M.A. had been sleeping. While searching the premises, Meeks discovered the latex gloves Duncan had used while examining M.A., and he discarded them. The gloves may have contained physical evidence that could have identified the true assailant, if any, of M.A. Neither Miles nor Duncan saw the gloves again after Meeks's search. While Meeks collected some items for preservation, he discarded some of the clothes M.A. had been wearing. The evidentiary

value of the discarded gloves and clothes was allegedly obviously to Meeks, and he never reported that he had disposed of the latex gloves.

Meeks and other members of the Peoria Police Department then went to Plaintiff's and Cole's home and interviewed Plaintiff and Cole about their activities on January 7, 2009, the day they watched M.A. Plaintiff and Cole cooperated with the police and provided consistent information to them. Despite the fact that nothing Plaintiff or Cole said suggested they had harmed M.A., Meeks allegedly prepared false police reports that attributed statements to Cole that she never made.[1] Plaintiff alleges that after Meeks continued to attempt to gather evidence implicating Plaintiff or Cole until March 24, 2009 (and from that point until April 1, 2009), no probable cause existed against either Plaintiff or Cole.

On March 24, 2009, Cole was indicted, arrested, and charged with obstructing justice and child endangerment. Her bond was set at $75,000. On or about March 31, 2009, Plaintiff was indicted, arrested, and charged with aggravated criminal sexual abuse, aggravated battery, and two counts of predatory criminal sexual assault. His bond was set at $200,000. Plaintiff claims that without the evidence fabricated by Meeks, neither Cole nor he ever would have been indicted, arrested, charged, prosecuted, or convicted. Indeed, he claims the arrests and charges were procured through the presentation of false evidence by Meeks to the Grand Jury.

Plaintiff alleges his guilt was impossible for several reasons, especially when viewed in light of the fact that Meeks selectively gathered physical evidence and selectively tested items in order to obtain evidence against Plaintiff. First, despite claims that semen was

---

[1] Specifically, the allegedly false report said Cole exclaimed "Oh My" when she changed M.A.'s diaper on January 7, 2009. Cole, however, allegedly advised Meeks she said "Oh Mya" but not due to any abnormal appearance of M.A. Furthermore, the report stated Cole was taken aback when she changed the diaper, but Cole denied telling Meeks that.

found in five areas on a diaper at Miles's and Duncan's home, no DNA profile could be identified, a fact of which the Illinois Appellate Court was eventually skeptical. Second, despite the fact that a single sperm was obtained from a baby wipe taken from Miles's and Duncan's home, no DNA profile could be identified. Third, Meeks knew Plaintiff had undergone a vasectomy and, accordingly, knew or should have known that it was extremely unlikely he could produce sperm. Despite that knowledge, however, Meeks "pressed on with his narrative."

Cole ultimately pleaded guilty. Plaintiff, on the other hand, proceeded to trial, where he was found guilty. At the time of sentencing, Plaintiff was fifty-nine years old, had no prior convictions other than traffic violations, and had ample support attesting to his good character. He received a sentence of twenty-five years in prison. While in prison, Plaintiff did not commit any rule infractions. As a result of his incarceration, Plaintiff suffers from post-traumatic stress disorder, often having nightmares and waking up screaming. This is due in part to the fact that he had nine or ten different cellmates while in prison, some of whom were violent.

In May 2015, the Illinois Appellate Court vacated Plaintiff's conviction outright due to insufficient evidence. No physical evidence linked Plaintiff to the offense, there were no witnesses to an assault on M.A., and M.A. was in the care of other individuals, including other men, during the time in question, they explained. They further noted the jury was not free to disregard uncontradicted testimony that Plaintiff could not have produced the sperm found on the baby wipe. Plaintiff alleges that as a result of Meeks's conduct, Plaintiff sustained physical and emotional injuries and suffered damages.

## PROCEDURAL BACKGROUND

On January 26, 2016, Plaintiff filed his Amended Complaint against defendants Shawn Meeks and the City of Peoria (ECF No. 31). The complaint alleged seven counts: (I)

4

a claim under 42 U.S.C. § 1983 for withholding exculpatory evidence; (II) a § 1983 claim for fabricating evidence; (III) a malicious prosecution claim under Illinois state law; (IV) a false imprisonment claim under Illinois state law; (V) an intentional infliction of emotional distress claim under Illinois state law; (VI) an indemnification claim against Defendant City of Peoria under Illinois state law; and (VII) a *respondeat superior* claim against Defendant City of Peoria under Illinois state law. ECF No. 31 at 11–15. On February 8, 2016, Defendants filed their first Motion to Dismiss (ECF No. 33). In an order dated April 21, 2016, this Court granted in part and denied in part Defendants' motion. ECF No. 38. The Court granted the motion to dismiss as to counts II, IV, and V, and it denied the motion as to counts I, III, VI, and VII. *Id.* The Court then referred the matter to Magistrate Judge Hawley for further handling. *Id.*

On November 11, 2016, Plaintiff filed his Motion for Leave to File SAC (ECF No. 47). Defendants did not respond and, on November 29, 2016, Judge Hawley granted Plaintiff's motion. *See* Text Order dated 11/29/2016. On December 1, 2016, Plaintiff filed his SAC. The complaint alleges six counts: (I) a claim under 42 U.S.C. § 1983 for withholding exculpatory evidence; (II) a § 1983 claim for fabricating evidence; (III) a § 1983 claim for federal malicious prosecution; (IV) a malicious prosecution claim under Illinois state law; (V) an indemnification claim against Defendant City of Peoria under Illinois state law; and (VI) a *respondeat superior* claim against Defendant City of Peoria under Illinois state law. ECF No. 48 at 13–17. Plaintiff specifically notes his federal malicious prosecution claim is currently not actionable under § 1983 in the Seventh Circuit, but he pleads the issue to preserve it for review, as it is currently before the United States Supreme Court. ECF No. 48 at 15, n.4.

5

On January 3, 2017, Defendants field their Motion to Dismiss Counts II and III of Plaintiff's SAC (ECF No. 51). On January 17, 2017, Plaintiff filed his response (ECF No. 53). This Order follows.

## LEGAL STANDARD

Dismissal under Federal Rule of Civil Procedure 12(b)(6) is proper if a complaint fails to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). When considering a motion to dismiss, a court must accept all factual allegations as true and draw all reasonable inferences in favor of the plaintiff. *Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011). A proper complaint, however, "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

## DISCUSSION

### Count II

As the Court said in its first motion to dismiss order, the Seventh Circuit has held "a police officer who manufactures false evidence against a criminal defendant violates due process if that evidence is later used to deprive the defendant of [his] liberty in some way." *Whitlock v. Brueggemann*, 682 F.3d 567, 580 (7th Cir. 2012). *See also* ECF No. 38 at 16. The Seventh Circuit has also noted, however, that a violation of due process in that context "involve[s] not merely the fabrication, but the introduction of the fabricated evidence at the

6

criminal defendant's trial." *Fields v. Wharrie*, 740 F.3d 1107, 1114 (7th Cir. 2014). *See also* ECF No. 38 at 16–17.

In their memorandum in support of that motion (ECF No. 52), Defendants argue "[t]he allegations contained in Count II of the SAC suffer from the same deficiency highlighted in this Court's April 21, 2016 dismissal order." ECF No. 52 at 6. The Court agrees. Plaintiff alleges, *inter alia*, fabricated evidence was "used to indict and arrest" Plaintiff and "was indirectly used at trial" to secure his conviction. ECF No. 48 at 14–15. That may well be true, and the Court expresses no opinion as to its truth. The fact that he did not—and by his own admission cannot—plead the allegedly fabricated evidence was *introduced* or *admitted* at his trial, however, is fatal to his claim under *Whitlock* and *Fields*.

Plaintiff cites to *Patrick v. City of Chicago*, 2016 WL 5792309 (N.D. Ill. Oct. 4, 2016), in an attempt to convince the Court fabricated evidence need not be introduced at trial to create a due process violation, but rather only need be used "in some way." *Patrick*, 2016 WL 5792309, at *11 (internal quotation omitted). *See also* ECF No. 53 at 4. The court in that case, however, specifically noted that certain cases in the same district support the proposition that "evidence must be introduced at trial in order to form the basis of a due process claim." *Id.* (citing *Starks v. City of Waukegan*, 123 F.Supp.3d 1036, 1046 (N.D. Ill. 2015)). This Court believes, as it did in its first motion to dismiss order, fabricated evidence must be introduced at trial in order to create a due process violation. *See* ECF No. 38 at 17–18. Accordingly, the Court GRANTS Defendants' motion with respect to Count II.

## Count III

With respect to Count III, the federal malicious prosecution claim, both parties concede the Court is currently bound by Seventh Circuit precedent that forecloses a federal malicious prosecution claim. *See, e.g.*, *Smith v. Lanz*, 321 F.3d 680 (7th Cir. 2003); *Newsome v. McCabe*, 256 F.3d 747 (7th Cir. 2001). Defendants ask the Court to dismiss

7

the claim, and Plaintiff asks the Court to reserve ruling until the United States Supreme Court has decided *Manuel v. City of Joliet*. The Court elects to dismiss the claim without prejudice and thereby GRANTS Defendants' motion with respect to Count III. Plaintiff is granted leave to refile Count III should the Supreme Court issue a decision that makes it so a plaintiff may bring a malicious prosecution claim pursuant to 42 U.S.C. § 1983.

## CONCLUSION

For the reasons set forth above, the Court GRANTS Defendants' Motion to Dismiss Counts II and III of Plaintiff's Second Amended Complaint (ECF No. 51). Count II is dismissed with prejudice, and Count III is dismissed without prejudice.

ENTERED this 27th day of January, 2017.

/s/ Michael M. Mihm
Michael M. Mihm
United States District Judge

8