## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## PEORIA DIVISION

| | | |
|---|---|---|
| **STEVEN COLE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 15-1292-MMM** |
| | ) | |
| **DETECTIVE SHAWN MEEKS,** *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

### <u>MEMORANDUM OPINION AND ORDER</u>

Presently before the Court are Plaintiff's Combined Motion for Judgment as a Matter of Law and Motion for New Trial (D. 164[1]) and Motion for Leave to File Reply (D. 178). For the reasons stated herein, Plaintiff's Combined Motion and Motion for Leave to File Reply are DENIED. This case remains CLOSED.

### <u>BACKGROUND</u>

On September 7, 2012, Plaintiff Steven Cole was found guilty by jury of predatory criminal sexual assault, along with other crimes, of a 20-month-old girl which he adamantly denied. He was subsequently sentenced to twenty-five years' imprisonment at one of the State's maximum-security penitentiaries. While imprisoned, Cole suffered an assault and harassment by fellow inmates, separation from his wife, and estrangement from his community. His reputation was also tarnished. After six years of incarceration, however, the Illinois Court of Appeals overturned his conviction,[2] and Cole was set free.

Shortly after his release, Cole brought the underlying claim arguing the lead detective in his criminal investigation, Shawn Meeks, proffered false testimony to a grand jury to secure his

---

[1] All references to the docket are abbreviated as (D. _ .)
[2] People v. Cole, 2015 IL App (3d) 120992-U.

indictment. Up until the grand jury, Cole argued, there was no probable cause to issue a warrant for his arrest. Cole asserted the prosecution was at a standstill until Meeks approached one of the lead prosecutors from the Peoria County State's Attorney's Office for advice. Meeks maintained it was the Office that pressed forward with the decision to present the case to a grand jury and asserted he testified accurately in front of the grand jury as to what he knew at the time. This Court found there existed an issue of material fact as to whether Meeks lied to the grand jury, and in so doing, was responsible for the malicious prosecution of Cole.

Prior to trial, both parties filed extensive motions *in limine* with the Court. Included in their motions, was Meeks' motion to bifurcate the liability and damages portions of trial. In his motion, Meeks argued he would be severely prejudiced if the jury were permitted to hear the parade of horribles that Cole suffered while incarcerated. He also argued the issue for the jury to determine was whether he proffered false testimony to the grand jury to return an indictment against Cole. Introducing collateral issues, Meeks argued, including alternative theories of the perpetrator's identity, would conflate the issues and confuse the jury. Cole countered by asserting malicious prosecution cases had been tried successfully without bifurcation and argued any prejudicial harm caused to Meeks through the introduction of damages evidence could be cured by a limiting instruction from the Court.

As part of their final pretrial order, both parties indicated they intended to introduce two expert witnesses at trial. Cole's experts would testify to the timing and causation of the victim's injury and would refute the state prosecution's contention that Cole was the source of the sperm found on a wipe at the victim's mother's residence. Meeks' experts would testify that, despite a vasectomy twelve years prior, Cole could have produced the sperm and that the state followed the proper methodology in its presentation of its case to the grand jury. The Court heard the

parties' arguments related to excluding the opposing experts from testifying at trial at a hearing on the parties' motions *in limine*. The Court also issued oral rulings on the motions, and the parties ordered transcripts of the proceeding. At the hearing, the Court excluded one expert from each party from testifying at the bifurcated trial, but allowed one expert from each party to testify during the damages phase.

Trial took place in the middle of April 2019, and lasted four days. During trial, the jury heard from two doctors who testified that, in their medical opinion, the victim's injury was most consistent with non-accidental trauma caused by penetration. One of the doctors testified that, in her medical opinion, the injuries were most likely the result of sexual assault. The jury also heard from Assistant State's Attorney ("ASA") Stephen Pattelli, who testified that a group of individuals from the State's Attorney's Office ("SAO") would normally decide which cases to present to an empaneled grand jury. Pattelli also testified that the SAO decided to present Cole's case to the grand jury, and that it was the determination of the grand jury whether to return the final indictment against Cole.

The jury also heard from Defendant Meeks. Meeks testified that based on the information he had at the time of his investigation, there were three viable suspects for the assault on the victim. Because he could not prove which of the suspects could have committed the assault, he testified that he presented his findings to an ASA who introduced the idea of convening a grand jury. At the culmination of trial, the jury reached a verdict in favor of Meeks and found him not liable for the malicious prosecution of Cole.

## PROCEDURAL HISTORY

On April 18, 2019, after four days of testimony, the jury returned a verdict finding Shawn Meeks not liable for the malicious prosecution of Steven Cole. (D. 152.) On April 23, 2019,

judgment was entered in favor of Meeks and the City of Peoria. (D. 155) On May 16, 2019, Plaintiff filed his Combined Motion for Judgment as a Matter of Law and Motion for New Trial. (D. 164.) On July 2, 2019, Defendant filed his response to Plaintiff's Combined Motion. (D. 172.) On July 17, 2019, Plaintiff filed his Motion for Leave to File Reply and attached his reply. (D. 178.) This Order follows.

## **LEGAL STANDARD**

### Motion for Judgment as a Matter of Law

Rule 50 of the Federal Rules of Civil Procedure allows a district court to enter judgment against a party who has been fully heard on an issue during a jury trial if "a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." FED. R. CIV. P. 50(a). "[A] Rule 50(a) motion for judgment as a matter of law must be made at the close of the evidence in order to bring a posttrial Rule 50(b) motion for judgment as a matter of law." *Petit v. City of Chicago*, 239 F. Supp. 2d 761, 767 (N.D. Ill. 2002) (citing *Laborers' Pension Fund v. A & C Envtl., Inc.*, 301 F.3d 768, 775-76 (7th Cir. 2002)). "The purpose of requiring that the motion be made after the submission of all the evidence, but before the case is given to the jury, is to afford the opposing party an opportunity to cure any defect in its case before the jury retires." *Laborers' Pension Fund*, 301 F.3d at 775. A Rule 50(b) motion "can be granted only on grounds advanced in the preverdict motion." FED. R. CIV. P. 50 advisory comm. note (2006 amend.); *Passananti v. Cook Cty.*, 689 F.3d 655, 660 (7th Cir. 2012).

### Motion for New Trial

Rule 59 allows a court to order a new trial if "the verdict is against the clear weight of the evidence or the trial was unfair to the moving party." *Clarett v. Roberts*, 657 F.3d 664, 674 (7th Cir. 2011). A verdict will be set aside contrary to the manifest weight of the evidence only

if "no rational jury" could have rendered the verdict. *Moore ex rel. Estate of Grady v. Teulja*, 546 F.3d 423, 427 (7th Cir. 2008). A court will not "set aside a jury verdict if a reasonable basis exists in the record to support the verdict, viewing the evidence in the light most favorable to the prevailing party, and leaving issues of credibility and weight of the evidence to the jury." *Kapelanski v. Johnson*, 390 F.3d 525, 530 (7th Cir. 2004). The Seventh Circuit has instructed jury verdicts deserve particular deference in cases with "simple issues but highly disputed facts." *Latino v. Kaizer*, 58 F.3d 310, 314 (7th Cir. 1995).

As it concerns attorney misconduct, the Court's inquiry under Rule 59 is similar to its inquiry under Rule 60(b)(3). *Venson v. Altamirano*, 827 F. Supp. 2d 857, 865 (N.D. Ill. 2011) (citing *Wharf v. Burlington N. R.R. Co.*, 60 F.3d 631, 637 (9th Cir. 1995)). Rule 60(b)(3) provides that a court may set aside a judgment if there is "fraud . . . , misrepresentation, or misconduct by an opposing party[.]" FED. R. CIV. P. 60(b)(3). "To obtain relief from judgment under Rule 60(b)(3), the moving party must show that: '(1) it maintained a meritorious claim at trial; . . . (2) because of the fraud, misrepresentation or misconduct of the adverse party; (3) it was *prevented from fully and fairly presenting its case* at trial.'" *Venson*, 827 F. Supp. 2d at 864 (quoting *Walsh v. McCain Foods Ltd.*, 81 F.3d 722, 726 (7th Cir. 1996)).

Failure to object to misconduct at trial constitutes waiver of the argument post trial. *United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 238-39 (1940) ("[C]ounsel for the defense cannot as a rule remain silent, interpose no objections, and after a verdict has been returned seize for the first time on the point that the comments to the jury were improper and prejudicial."); *Gonzalez v. Volvo of America Corp.*, 752 F.2d 295, 298 (7th Cir. 1985); *Gaik v. Mullins*, No. 05-C-2335, 2009 WL 2391854, at *10 (N.D. Ill. July 30, 2009) ("Plaintiff's failure to object to Defendant's opening statements constitutes a waiver of this argument.").

## DISCUSSION

Cole brings his Combined Motion arguing there were erroneous pretrial evidentiary rulings prohibiting his presentation of material evidence at trial. He also argues he is entitled to a new trial as a result of defense counsel's violations of rulings on certain motions *in limine* and because there was insufficient evidence presented by Meeks to refute the evidence that there was no probable cause to support his indictment. Lastly, Cole argues the Court abused its discretion by granting Meeks' motion to bifurcate trial. Meeks counters these arguments by asserting Cole is procedurally barred from seeking judgment as a matter of law, as Cole failed to make a Rule 50(a) motion at trial, and also argues Cole's Combined Motion lacks merit.

As a preliminary matter, the Court agrees with Meeks' argument on forfeiture and notes Cole failed to raise any Rule 50(a) motion for judgment as a matter of law during trial. (*see generally*, D. 159-162.) For a district court to consider a post-trial motion for judgment as a matter of law, the motion must be predicated on a Rule 50(a) motion made before the evidence is submitted to the jury. *McKinnon v. City of Berwyn*, 750 F.2d 1383, 1388-89 (7th Cir. 1984). Where no Rule 50 motion is made prior to the submission of evidence to the jury, any subsequent Rule 50 claim is forfeited. *See* FED. R. CIV. P. 50 advisory comm. note (2006 amend.) ("Because the Rule 50(b) motion is only a renewal of the preverdict motion, it can be granted only on grounds advanced in the preverdict motion."); *Unitherm Food Sys., Inc. v. Swift-Eckrich, Inc.*, 546 U.S. 394, 404-05 (2006) (finding forfeiture of a claim not presented in a Rule 50(a) motion and not renewed in a Rule 50(b) motion); *Downes v. Volkswagen of America, Inc.*, 41 F.3d 1132, 1139-40 (7th Cir. 1994) ("the Advisory Committee [has] made clear that Rule 50 deliberately retain[ed] the requirement that a motion for judgment be made prior to the close of the trial, subject to renewal after a jury verdict has been rendered.") (internal citation omitted)).

Here, Cole's eligibility for judgment as a matter of law has been forfeited, and the Court addresses the arguments made in his Combined Motion under the guidelines of Rule 59(a). It also addresses the arguments according to the four major areas for relief he has identified.

## I.     Trial Bifurcation

In his Motion, Cole argues the Court abused its discretion in granting Meeks' pretrial motion to bifurcate the liability and damages portions of trial. Cole asserts the common element of malice could not be extricated from the liability phase and that it was improper for the Court to consider evidence relating to his underlying guilt or innocence in determining the potential prejudice to the opposing party. In reviewing the record, it is clear Cole failed to make these objections in either his written opposition to Meeks' motion to bifurcate (D. 136) or during oral arguments on the motions *in limine*. (D. 146 at 3-16). In Cole's written opposition, he stated:

> One wonders how limited Plaintiff would be in cross-examining Meeks if the trial is bifurcated. For example, Plaintiff will demonstrate through Meeks the awesome power his status as an investigator instills in him. Through his conduct, such as his testimony to the grand jury and at Plaintiff's trial, Meeks had the power to imprison Steven Cole for the rest of his life. Meeks did so, demonstrating his malice, an element of malicious prosecution. Meeks's malice will also be relevant to the damage phase, as it is an element of punitive damages. Thus, not only would bifurcation fail to shorten the trial, it could lengthen it and confuse the jury.

(D. 136 at 9.) Accordingly, Cole's after-the-fact objections on the issue of bifurcation, which he failed to elucidate at or before trial, are waived.

Notwithstanding waiver, Cole's argument the Court impermissibly bifurcated trial also fails on its merits. Rule 42 of the Federal Rules of Civil Procedure provides, "to avoid prejudice . . . the court may order a separate trial of one or more separate issues, claims, crossclaims, counter claims, or third-party claims." Fed. R. Civ. P. 42(b). The Seventh Circuit outlined a three-step test for determining when bifurcation is appropriate. It instructed:

> First, the trial judge must determine whether separate trials would avoid prejudice
> to a party or promote judicial economy. Only one of these criteria—avoidance of
> prejudice or judicial economy—need be met before a court can order separation.
> Next, the court must be satisfied that the decision to bifurcate does not unfairly
> prejudice the non-moving party. Finally, separate trials must not be granted if
> doing so would violate the Seventh Amendment.

*Houseman v. U.S. Aviation Underwriters*, 171 F.3d 1117, 1121 (7th Cir. 1999) (internal citations omitted). Satisfying just one of the criteria listed in Rule 42(b) is enough for a court to order bifurcation, *Treece v. Hochstetler*, 213 F.3d 360, 365 (7th Cir. 2000) (citing *Berry v. Deloney*, 28 F.3d 604, 610 (7th Cir. 1994)), and "[t]he district court has considerable discretion to order the bifurcation of a trial," which will be overturned "only upon a clear showing of abuse." *Krocka v. City of Chicago*, 203 F.3d 507, 516 (7th Cir. 2000).

During the pretrial hearing on Meeks' motion to bifurcate, he argued, and the Court agreed, that a wide swath of information that was irrelevant to his liability was going to be introduced at trial. (D. 146 at 4:7-24.) That information, continued Meeks, included evidence indicating Cole had a vasectomy and was incapable of emitting sperm. *Id.* It also included the argument Cole was innocent and incarcerated for four years for a crime he did not commit. *Id.* at 7:4-11. In addition, defense counsel argued Cole was prepared to testify about the horrors he experienced during his incarceration (*id.* at 20-22), the impact on his marriage as a result of his prosecution (*id.* at 22-24), and the emotional distress he suffered due to his conviction (*id.* at 23-25). In the Court's determination, while this information would be relevant to Cole's potential damages, it was entirely irrelevant to whether Meeks intentionally mislead the grand jury in order to secure Cole's criminal indictment. *Id.* at 10:21-23. More importantly, this information could severely prejudice Meeks if the trial was permitted to continue as one proceeding. (*Id.* at 9:10-14.)

In terms of prejudice to Cole as a result of bifurcation, Cole only argued the case failed to meet the requirements for bifurcation and that bifurcating trial would "open the door" to permitting the admission of evidence in the damages phase that would not otherwise be admitted. *Id.* at 13:22-14:4. The Court avoided a violation of the Seventh Amendment prior to trial by declaring that trial would proceed in two phases in front of the same jury. *Id.* at 17:3-9. If the jury found in favor of Cole on the issue of liability, it would move immediately into the damages phase. *Id.* After reading the parties' briefs and listening to oral arguments on the issue, the Court ruled:

> [T]he evidence that would be presented on [the] issue of liability . . . is pretty clear. Once we get past the issue of liability, . . . the water gets very muddy. And I have serious concerns about confusing the jury and the possibility of unfair prejudice. So I'm going to grant the motion for bifurcation. . . . . We will select a jury, present the evidence -- you will present the evidence on liability. They will return a finding. And then if their finding is a finding of liability, then we'll immediately proceed into the damages phase. This may require an adjustment as to when your people will be called, but that's all right.

*Id.* at 16:20-17:9.

The record fails to demonstrate the Court abused its discretion by granting Meeks' motion to bifurcate. The Court carefully considered the arguments for and against bifurcation and ultimately ruled in Meeks' favor to avoid unfair prejudice to him at trial. *Id.* at 9:9-14; 10:21-23; 13:18-21; 16:20-17:9. Its bifurcation decision also failed to unfairly prejudice Cole, as Cole was permitted to argue the decision to prosecute him was arbitrary and ill-motivated, which he did on countless occasions at trial. (*see e.g.*, D. 159 at 44-64; D. 161 at 322-342; D. 162 at 121-149.) Alternatively, the jury could have inferred malice from a lack of credible evidence indicating Meeks had probable cause to secure Cole's indictment. (D. 151 at 22.) A jury instruction was drafted and included on that specific issue. *Id.* Lastly, Cole's Seventh Amendment rights were not implicated since the trial was separated into two separate phases yet

remained in front of the same jury. Accordingly, Cole's Motion for a New Trial on the issue of trial bifurcation is DENIED.

## II.    Exclusion of Expert Testimony

Prior to trial, the parties provided extensive argumentation on their motions *in limine*. (*See* D. 106-134; 146.) In addition to their motions, each party indicated he intended to introduce two expert witnesses at trial, and both parties argued to exclude the other's experts.

Cole intended to call Ann Burgess, Ph.D., a registered nurse and professor of psychiatric nursing, to testify to the possible cause(s) and timing of the victim's injury. (D. 98-2 at 1, 5-9.) Dr. Burgess would also testify to the "typology of a child molester." (D. 146 at 38:11-16.) Cole's counsel also extrapolated that Dr. Burgess would testify that the "damage to the [victim] . . . . could have occurred by the mother performing manipulations[;]" as the victim had well-documented problems with constipation. *Id.* at 39:7-10.

In response to Cole's intention to offer Dr. Burgess as an expert, defense counsel argued her testimony would "simply try[ ] to make credibility determinations on the evidence" (*id.* at 40:4-5); that there was nothing about her methodology or credentials that would indicate her testimony should be allowed (*id.* at 41:25-42:3); and that her testimony would be irrelevant to the determination whether Meeks lied to the grand jury to secure Cole's indictment (*id.* at 41:1-5). Defense counsel also argued Dr. Burgess would proffer an unsubstantiated credibility determination that Cole did not meet the criteria of a child molester. *Id.* at 41:12-24.

The Court excluded the testimony of Dr. Burgess during the liability phase. *Id.* at 43. Specifically, her testimony concerning the "well-developed body of evidence about the history of people that molest children," as the testimony was irrelevant to the issue the jury was to determine. *Id.* The issue before the jury was whether Meeks lied to a grand jury during his

investigation in order to secure an indictment against Cole.  *Id.* at 5:22-6:1; 10:18-20.  Although the Court excluded Dr. Burgess from testifying during the liability phase, it did allow her to testify during the damages phase that, in her expert opinion, the victim's injury could have been accidental.  *Id.* at 43:1-7.  Coincidentally, the Court had barred one of Meeks' experts from testifying, *altogether*, for similar relevancy objections from Cole's counsel.  *Id.* at 21:7-22:1; 26:14-19.  As to the testimony of Dr. Burgess, the Court ruled:

> I'm sure she's a world-renowned expert on this type of thing, but I'm not going to allow that part of her testimony. However, I will allow the part of her testimony where she's going to opine, as I understand it, that the cause of the injury [to the victim] could have been accidental.

*Id.* at 43:1-6.  As it related to the relevancy of both parties' expert testimony, the Court also stated:

> [T]he concern I have about this -- and I have a similar concern on all the experts -- is in looking at the -- especially in the context of a bifurcated trial where the first element, that the defendant falsely testified, I don't think that what she says is relevant on that. Number two, that the false testimony was caused in part or whole by malice. I'm not sure about that either. So[,] I'm very concerned, and I'll be curious what the response is, but in terms of liability at least, I don't -- I'm having problems with her relevance.

*Id.* at 20:18-21:5.

Cole now argues that restricting Dr. Burgess' testimony to the damages phase of trial was fatally prejudicial to his cause, as her testimony was necessary to refute Meek's extensive testimony that the injury to the victim was intentional.  (D. 164 at 5.)  Cole adds that he was prejudiced in his ability to implicate the victim's mother in causing the injury, even though she admitted to performing maneuvers to alleviate the child's constipation.  *Id.* at 7.  Cole argues the Court's ruling excluding Dr. Burgess' testimony on an alternative theory of liability deprived him of a fair trial.  *Id.*

Meeks counters this argument by asserting Cole's insistence that he should have been permitted to offer a previously unknown medical opinion ignores the distinction between probable cause and actual innocence. (D. 172 at 14.) He also argues Cole's purported innocence was relevant only to his damages. *Id.* Meeks adds that the medical opinions from Drs. Petrak and Stanfill were the only medical evidence he was provided during his investigation and that the evidence was relevant to whether probable cause existed to seek an indictment against Cole, or whether Meeks was simply acting in malice to indict him. *Id.* Meeks concludes his argument by asserting Cole was attempting to muddy the waters with Dr. Burgess' opinion that there was another possible explanation for the victim's injuries and that such an opinion was immaterial to the ultimate issue of his candor to the grand jury. *Id.*

A party seeking a new trial based on erroneous evidentiary rulings bears a "heavy burden." *Alverio v. Sam's Warehouse Club*, 253 F.3d 933, 942 (7th Cir. 2001). "The decision whether to admit evidence is a matter peculiarly within the competence of the trial court[.]" *Manuel v. City of Chicago*, 335 F.3d 592, 595 (7th Cir. 2003). A new trial will be warranted only if "the error had a substantial and injurious effect or influence on the determination of a jury . . . and the result is inconsistent with substantial justice." *Cerabio LLC v. Wright Med. Tech., Inc.*, 410 F.3d 981, 994 (7th Cir. 2005). Under the Federal Rules of Evidence, evidence is only relevant if (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action. FED. R. EVID. 401.

The Court made the proper decision to exclude the expert testimony of Dr. Burgess during the liability phase at trial, as the argument that there was another *possible* explanation for the victim's injury was irrelevant to whether Meeks lied to the grand jury in order to return a true bill of indictment against the Plaintiff. Evidence that the victim's mother had attempted to

maneuver the child to defecate only became available *after* Plaintiff's indictment, at which time the Defendant had no further involvement in the case. Accordingly, expert testimony that offered an unavailable alternate theory of injury to the victim, would not have assisted the trier of fact in determining whether Meeks lied to the grand jury to indict Cole. The Court exercised sound discretion in excluding Dr. Burgess' testimony during the liability phase at trial, and Plaintiff's Motion for New Trial on this ground is DENIED.

### III.    Insufficient Evidence

To prove his claim of malicious prosecution at trial, Plaintiff had to establish by a preponderance of the evidence: (1) Defendant commenced or continued a criminal proceeding against the Plaintiff; (2) the criminal proceeding terminated in favor of the Plaintiff; (3) there was no probable cause for the criminal proceeding; and (4) Defendant acted with malice in bringing or continuing the criminal proceeding. (D. 151 at 20.) As it relates to probable cause, the jury was instructed:

> Probable cause is a state of facts that would lead a person of ordinary caution and prudence to believe, or to entertain an honest and strong suspicion, that the person committed the offense charged. A reasonable ground for belief of the guilt of the accused may be based on information from other persons as well as on personal knowledge. It is not necessary to verify the correctness of each item of information so obtained; it is sufficient to act with reasonable prudence and caution. Probable cause requires more than just a suspicion. But it does not need to be based on evidence that would be sufficient to support a conviction. The fact that the criminal charges against the Plaintiff were later dismissed does not, by itself, mean there was no probable cause at the time of the prosecution. In addition, the actual guilt or innocence of the Plaintiff is not at issue.

*Id.* at 21.

Cole argues, in cursory fashion and sans reference to supporting caselaw, he is entitled to a new trial because "it is undisputed that the evidence established a lack of probable cause and that Defendant Meeks had an improper motive for the prosecution [of Plaintiff]." (D. 164 at 20.)

Meeks counters by asserting Cole's argument: (i) ignores the essential element of commencement, (ii) improperly views the evidence in the light most favorable to Cole, (iii) and disturbingly fails to cite any legal authority in support of its proposition. (D. 172 at 3.) On this particular ground for relief, the Court agrees with Meeks and DENIES Cole's Motion for New Trial on the sufficiency of evidence presented at trial.

In viewing the evidence in the light most favorable to Meeks, the Court finds a reasonable basis exists in the record to support the verdict for him. More importantly, it was Cole's burden to establish by a preponderance of the evidence at trial that Meeks commenced or continued a criminal proceeding against him. Cole conspicuously omits any argument he met his burden by satisfying this element during trial. Finally, Cole fails to include any caselaw supporting his curious proposition that the district court must grant a new trial where conflicting evidence has been presented to the jury concerning one of the elements of the claim for which he carries the burden of proof. Accordingly, his arguments are considered waived. *See United States v. Tockes*, 530 F.3d 628, 633 (7th Cir. 2008) ("Unsupported and undeveloped arguments . . . are considered waived."); *APS Sports Collectibles, Inc., v. Sports Time, Inc*., 299 F.3d 624, 631 (7th Cir. 2002) ("[I]t is not this court's responsibility to research and construct the parties' arguments, and conclusory analysis will be construed as waiver." (internal quotation marks omitted)).

Assuming Plaintiff's argument survives the procedural bar, the Court finds there was more than sufficient evidence for a rational jury to determine there existed a state of facts that would lead a person of ordinary caution and prudence to entertain an honest and strong suspicion that Cole committed a crime and to seek a true bill of indictment. This determination expunges Cole's contention that Meeks failed to refute evidence that there was a lack of probable cause for his underlying prosecution during trial. .

On the second day of trial, the jury heard the testimony of Dr. Amy Stanfill. (D. 160 at 43.) Dr. Stanfill testified she was an attending surgeon at OSF-Hospital, in good standing, in January 2009. (D. 172-2 at 3.) She stated she performed surgery on the victim on January 8, 2009. *Id.* at 4. According to Dr. Stanfill, the surgery consisted of an examination of the victim's perineum under anesthesia and repair of a third-degree laceration. *Id.* at 11. A third-degree laceration, she explained, meant the laceration was through the external portion of the vagina, through the deep vaginal tissue, through the perineal body, and through a portion of the external anal sphincter. *Id.* at 12. Dr. Stanfill also testified that the injury probably occurred within 48 hours from the time of her examination (*id.* at 15); the injury was most consistent with a non-accidental trauma (*id.* at 20); and the wound appeared to be because of penetration (*id.* at 21).

That same day, the jury also heard the testimony of ASA Pattelli. (D. 160 at 182-259.) Pattelli testified he had been working as an ASA for over thirty-eight years and that he was in charge of deciding which cases to present to the grand jury at the time of Cole's indictment. *Id.* at 182, 185. Pattelli recalled that his office sought the indictment of Cole based on the information Meeks provided to him. *Id.* at 204. Patelli agreed that one of the reasons for calling Cole to testify in front of the grand jury was to clarify inconsistencies between Cole and his wife in their accounts of what happened during a diaper change in the timeframe the child was injured. *Id.* at 208-09. Pattelli testified that when questioned at the grand jury, both Cole and his wife invoked their Fifth Amendment right to remain silent. *Id.* at 228.

Pattelli also testified that a group of individuals from the SAO would normally decide what cases to present to an impaneled grand jury, including the First Assistant and the ASA who ultimately got assigned to the case. *Id.* at 230-31. Pattelli stated, prior to the impaneling of the

grand jury, instead of arresting Cole, Meeks presented the case to members of the SAO and it was the office that made the decision to present the case to the grand jury. *Id.* at 233-34, 250. Pattelli also acknowledged it was the determination of the grand jury whether to issue the final indictment. *Id.* at 235. Finally, Pattelli testified, after the grand jury issued a true bill of indictment against Cole, the SAO made the decision to arrest Cole and proceed with his prosecution. *Id.* at 252.

On the third day of trial, the jury heard the testimony of Dr. Channing Petrak. (D. 161 at 5-58.) Dr. Petrak testified she served as staff physician at the Pediatric Resource Center ("PRC") from 2003 until 2011, when she became the PRC's medical director. *Id.* at 6-7. Dr. Petrak stated she examined the victim on January 8, 2009, and noted the victim began to get uncomfortable during the genital portion of her exam. *Id.* at 8, 11. According to Dr. Petrak, there was a large laceration through the bottom portion of the victim's genitals, through the perineum going down almost to the anus. *Id.* at 11. Dr. Petrak testified the injury was so severe that she concluded the victim needed immediate surgical intervention. *Id.* at 13.

Dr. Petrak asserted the postoperative diagnosis was that the victim had sustained a grade-three perineal laceration. *Id.* at 17. Dr. Petrak testified that in her medical opinion the injury was non-accidental, as there was no history of an accident and accidental traumas were not this extensive. *Id.* at 21. In her sixteen years at the PRC, Dr. Petrak stated, she had only seen one other injury of that severity in a child, three or younger. *Id.* at 22. During her testimony, Dr. Petrak shared the ultimate finding from her exam, which was that the evaluation was consistent with sexual abuse and that the injuries to the victim were most likely the result of a sexual assault. *Id.* at 24, 26.

On the third day of trial, the jury also heard the testimony of Defendant Meeks. (D. 161 at 223-344.) Meeks testified he had been in law enforcement since 1988 (*id.* at 226) and that he began working with the Children's Advocacy Center in 2004 (*id.* at 227). Meeks stated he became involved in Plaintiff's criminal case after being summoned by Saint Francis Hospital in reference to a twenty-month-old child who had a tear to her vaginal area. *Id.* at 232. As part of his investigation into the incident, Meeks testified he spoke with the victim's mother. *Id.* at 235. According to Meeks, the mother indicated the child spent the majority of the previous day in the care of Cole and his wife. *Id.* at 237. Meeks testified he found the mother to be credible. *Id.* at 237-38, 247. Meeks also testified he interviewed the mother's roommate at the Peoria Police Department. *Id.* at 243.

As part of his investigation, Meeks testified that he interviewed Dr. Petrak. *Id.* at 246. Dr. Petrak told him the location of the injury to the victim was very concerning and could have been life threatening. *Id.* at 247. Meeks stated there was no indication the injury to the victim was accidental (e.g., the victim falling on a toy) because the diaper(s) the victim was wearing failed to indicate any sign of damage or tear. *Id.* at 247-48. Meeks told the jury that his determination, based on the information he obtained from interviews, was that the victim's injury was most likely the result of a sexual assault. *Id.* at 248-49. As such, Meeks testified his focus switched to trying to determine who could have committed the sexual assault. *Id.* at 249.

Based on the results of his investigation and the timeline the victim's mother provided, Meeks stated, he concluded there could have been four individuals responsible for the assault on the victim: (i) the victim's mother, (ii) the mother's roommate, (iii) Cole, and (iv) Cole's wife. *Id.* at 260. Meeks continued that, out of the four potential suspects, Cole and his wife were the least cooperative, as they were the only suspects who refused to talk to him without first

consulting their attorney. *Id.* at 263. Meeks was also concerned, he explained, because Cole and his wife told different versions of what happened during the child's last diaper change. *Id.* at 269, 273-73. Meeks testified Cole and his wife also initially failed to inform him that their adult son had stopped by the day they babysat the victim, which Meeks found concerning. *Id.* at 274. Meeks continued that it wasn't until the day after he interviewed Cole that Cole called him and stated his attorney instructed he and his wife to call Meeks and inform him that the adult son of Cole's wife had come to their house the afternoon they babysat the victim. *Id.* at 276.

Meeks testified he interviewed the son on Monday, January 12, 2009, and the son stated that his mother called him the night of January 8, 2009, asking him to come to their house because she could not talk to him on the phone. *Id.* at 284. According to Meeks, the son told him when he arrived at the house, Cole's wife informed him that the victim had been abused and that he was going to be dragged into the investigation because he was there the night of the incident. *Id.* Meeks later testified that this was concerning to him because he interviewed Cole and his wife only twelve hours after the conversation between Cole's wife and her son and the Coles did not recall that they talked to the son or that the son had been at their house when Meeks asked them point-blank if anyone had come by. *Id.* Meeks stated that he did not believe the Coles were telling him the truth when they failed to disclose that their adult son had been at their house the day they babysat the victim. *Id.* at 285.

Finally, Meeks testified, at the end of Cole's interview on January 9, 2009, Meeks informed him they would probably need to speak again, and Cole offered that Meeks call him directly instead of his attorney. *Id.* at 292. However, Meeks continued, when he contacted Cole for a follow-up interview, Cole told him to call his attorney. *Id.* at 291-92. According to Meeks, he attempted to reach Cole's attorney to request a second interview with eight separate phone

calls, none of which were returned. *Id.* at 292. Since he could not reach the attorney, Meeks testified he ran the scenario past an ASA and the ASA offered to do a grand jury investigation to subpoena Cole and his wife. *Id.* at 294. Meeks stated he did not arrest Plaintiff because while he thought the injury occurred at the Cole's house, he could not eliminate any two of the three adults at the house to make one responsible for the crime. *Id.* at 297. According to Meeks, he was not comfortable making an arrest based on the information he had. *Id.* Meeks testified he could not prove which adult harmed the victim. *Id.* At that point in time, Meeks testified, the ASA introduced the idea of convening the grand jury. *Id.* at 298.

In light of the aforementioned trial testimony, the Court finds there was a reasonable basis to support the jury's determination that Meeks was not liable for the malicious prosecution of Cole. Cole also failed to establish that Meeks commenced or continued a criminal proceeding against him at trial. Cole's lack of supporting caselaw (*see* D. 164 at 18-20) also deals a fatal blow to his argument. As such, his Motion for New Trial on the ground of insufficient evidence is DENIED.

## IV. Violations of Court Rulings

Cole's final argument is that he is entitled to a new trial due to defense counsel's misconduct at trial. (D. 164 at 7.) Specifically, Cole contends that on myriad occasions, he was prejudiced by defense counsels' violations of the Court's preliminary rulings on motions *in limine*. *Id.* at 7-18. Despite filing his objections in the motion at hand, however, Cole failed to raise objections at all but two of the alleged violations during trial. Cole's failure to object at trial constitutes waiver of the argument that these violations caused him prejudice. As to the two incidents to which Cole did object, the record demonstrates defense counsel did not engage in misconduct, as they did not violate the Court's rulings *in limine*. Even if counsel had violated

the Court's rulings, the violations did not prevent Cole from fully and fairly presenting his case to the jury, and he was not prejudiced to a degree which would necessitate a new trial. Thus, Cole's argument for a new trial on this ground is also DENIED.

In total, Cole offers approximately seventeen violations of the Court's rulings *in limine* to support his argument for new trial. (*Id.* at 7-18.) The Court breaks these violations into two main arguments for relief: (i) defense counsel violated the Court's rulings on the Fifth Amendment (*id.* at 7-16); and (ii) defense counsel violated the Court's ruling on evidence concerning Cole's innocence during the liability phase of trial (*id.* at 16-18). Cole's first argument is comprised of purported violations where defense counsel referenced his invocation of the Fifth Amendment during his grand jury testimony, at trial. *Id.* at 9-16. Those alleged violations occurred in Defendant's opening statement (*id.* at 9), during cross-examination of Cole's wife (*id.*), five times during cross-examination of Cole (*id.* at 9-11), three times during cross-examination of Pattelli (*id.* at 11), during direct examination of witness Jodi Hoos (*id.* at 12-15), and in Defendant's closing argument (*id.* at 15-16).

During trial, however, Cole failed to object to each alleged violation with the exception of reference to his invocation of the Fifth Amendment by Pattelli during Defendant's cross-examination (D. 160 at 227:21-228:8), and during direct examination of Hoos, where she offered unsolicited testimony that "[The Coles] had attorneys. In our experience, guilty people get an attorney; innocent people cooperate" (D. 162 at 93:3-5).

The record demonstrates the following colloquy took place between defense counsel and Pattelli during cross-examination concerning the first alleged violation of a ruling *in limine*:

> Q: Counsel asked you that - - whether or not you ever had the opportunity to ask Mr. Cole and Mrs. Cole what happened. Do you remember that question?
>
> A: Yes.
>
> Q: You, in fact, did have the opportunity, didn't you? You asked them during the grand jury proceeding what happened to this little girl?
>
> A: I believe so, yes.
>
> Q: And both of them pled the Fifth, did they not?
>
> A: Yes.

(D. 160 at 227:21-228:6.) At trial, Cole did not object to Pattelli's answer, rather he requested the limiting instruction be read to the jury, to which the Court complied. *Id.* at 228:11-17.

Cole now argues defense counsel's line of questioning was a violation of the Court's preliminary ruling concerning his invocation of the Fifth Amendment during his grand jury testimony. (D. 164 at 11.) The Court disagrees. It finds the aforementioned questioning was not a violation of its ruling and that defense counsel did not engage in misconduct by referencing Cole's invocation of the Fifth Amendment to the grand jury at trial.

Prior to trial, Cole was concerned the invocation of his Fifth Amendment rights during his grand jury testimony would send the implicit message to the jury he was guilty of his underlying criminal conviction. He submitted a motion *in limine* on the issue, arguing:

> Defendant Meeks and additional defense witnesses have testified that the fact that [Plaintiff] . . . invoked [his] Fifth Amendment right to counsel allowed them to infer their guilt to a degree. Such an inference is contrary to law and against a fundamental principle of the justice system. Therefore, no witness should be permitted to suggest the invocation of the privilege suggests guilt. Further, because the jury may decide that the reason the Coles invoked the privilege was to hide wrongdoing, no evidence that they did so should be admitted.

(D. 106 at 5-6.)  At a pretrial motion hearing, a lengthy discussion was had by the parties concerning Cole's fourth motion *in limine*.  (D. 146 at 57-81.)  After some back and forth on the issue, Cole's counsel clarified his request, stating:

> [O]ur jury needs to hear the evidence that was presented to them. They don't need that filtered through the two prosecutors saying, "We know why the grand jury indicted him. The grand jury indicted him because they believed the mother or they didn't like the Coles took the Fifth Amendment." That's what is improper, is having the prosecutors come in and testify they understand what was in the mind of [the] grand jury.

(D. 146 at 66:24-67:8.)  Defense counsel then rebutted:

> [The members of the grand jury] were told that [the Coles] had a constitutional right to assert the Fifth Amendment . . . . They were not told that [they] couldn't consider that in [their] deliberations. And it's pretty clear that [they] likely did. So -- I guess what I'm saying is that the fundamental problem we have with that is Detective Meeks had one specific role in this. And so for him to get saddled with an -- with an assessment of probable cause that excises a key piece that was in front of the grand jury, that elevates what he did and takes out a -- as big a part of it as anything that was in front of the grand jury, and it presents a distorted view. So I can understand some kind of instruction being fashioned, but for this jury to not see what all the evidence that was presented, I mean I think the grand jury transcripts are all going to come in, and I don't know how if it's fair to Meeks to --

*Id.* at 77:15-78:9.  Cole's counsel replied:

> I think, your honor, that we've discussed this. That we should -- if we could have a limiting instruction on the Fifth Amendment . . . . Because I do agree, I mean we're trying to give the full picture to this jury. And so on our motion in limine number four, if we withdrew that with the understanding that we would craft or fashion a limiting instruction. I mean [the members of the grand jury] were told that the Coles had a constitutional right to take the Fifth Amendment, but if we could go beyond that, that that can't be held against them.

*Id.* at 78:13-79:1.  The Court then instructed:

> I think where we are now is in terms of number three, that if [the witnesses] -- [the witnesses] can testify that at the grand jury proceeding, Petrelli (sic) or Hoos would say that [the Coles] invoked their Fifth Amendment rights. The jury was instructed that they had the right to do that. Then it may be proper, at some point, to give [the jury] a limiting instruction about that. But it's clear that that was in

the mind of the grand jury . . . I am going to permit that . . . I'm not gonna permit the part about the prosecutors testifying about [the Coles'] demeanor. That's out.

*Id.* at 79:2-14.

At trial, the parties submitted a proposed joint jury instruction on the issue (D. 142), which was modified to read:

> You recently heard that Steven Cole and Janet Cole invoked their Fifth Amendment right to remain silent before the grand jury. They have a constitutional right to do so. The fact that the Coles invoked their right to remain silent can in no way be used by you to infer or suggest the guilt of either Steven Cole or Janet Cole.

(D. 159 at 95:20-96:1.)  Finally, on the first day of trial, Cole's counsel was instructed by the Court to "let me know when you want me to give that limiting instruction." *Id.* at 23:3-4.

Cole now argues defense counsel was barred from referencing the Fifth Amendment *at all* during trial (D. 164 at 7), and laments the fact the Court gave the limiting instruction only twice (*id.* at 15).  As the record demonstrates, however, Cole withdrew his fourth motion *in limine* in favor of a limiting instruction on the issue.  (D. 146 at 78:13-79:1.)  The Court also explicitly ruled that either Pattelli or Hoos could testify that Cole and his wife took the Fifth Amendment during their testimony to the grand jury.  *Id.* at 79:2-14.

As it relates to issuing the limiting instruction, the Court twice issued the instruction at trial.  It was read at the beginning of trial before any witness took the stand (D. 159 at 95:18-96:1), and after Pattelli testified that Cole and his wife pleaded the Fifth during their testimony to the grand jury (D. 160 at 228:11-17).  Cole's counsel initially requested the instruction be read a third time, after witness Hoos' spontaneously declared that, in her experience, "guilty people get an attorney."  But, after a sidebar on the matter and at Cole's suggestion the Court strike the comment instead and read the limiting instruction, the Court struck the comment and permitted defense counsel to re-direct his line of questioning.  (D. 162 at 943: 19-23.)  The Court's decision

to strike the testimony had the effect of minimizing any prejudicial effect the comment may have had on the jury.

The Court also made the correct decision to decline reading the jury instruction, as the instruction was irrelevant to the subject matter of Hoos' impulsive declaration. Specifically, the witness was asked by defense counsel:

> Q. Judge, focusing you on the time in which your office made the decision to seek the indictment against Mr. Cole, okay -- that's what I want to focus you on -- so, that would have been in March of 2009, correct? . . . . Okay, Can you please explain to the jury what basis you believed that an indictment should be sought against Mr. Cole?

*Id.* at 92:1-9. Cole argues the question was a subtle attempt to subvert the Court's ruling on his third motion *in limine* concerning probable cause. He asserts Hoos' testimony outlining the evidence she believed justified his indictment was synonymous with Hoos expressing her opinion that probable cause existed at the time of the indictment. Once again, the Court disagrees. The Court's ruling on Cole's third motion *in limine*, stated, in part:

> I think the witness can testify that at the time -- Petrelli (sic) could testify at the time the case was -- they started the presentation of the case to the grand jury, I think he could say that he believed at that time, based on the medical evidence and everything else, that he believed at that time there was probable cause. But after that, I'm not going to allow Petrelli (sic) or Jodi Hoos to say, for example, "At the time we asked the jury to deliberate and when they returned this indictment, that there was probable cause." I think this jury has to make that decision based on all the evidence that was presented.

(D. 146 at 74:13-75:8.)

The record demonstrates Hoos could not testify that, at the time the grand jury returned a true bill of indictment, there was probable cause to indict Cole. That issue was for the jury to decide. (*See* D. 151 at 20, ¶ 3.) She could testify, however, that at the time the case was *presented* to the grand jury, she believed there was sufficient information to seek an indictment. The record also demonstrates Cole's counsel waited until the witness finished her narrative, and after she

interjected a line about innocent people cooperating with an investigation, before he objected. (D. 162 at 93:6.)

Finally, Cole had an opportunity to impeach the witness or to explore her statement directly during recross-examination, which he did, by asking, "[Y]ou just went through kind of a laundry list of considerations. I just want to ask you this final question: Your office sought the indictment of Steven Cole based on the investigation of Detective Meeks and the information he provided, correct?" (D. 162 at 99: 4-9.) Accordingly, the record fails to demonstrate defense counsel engaged in misconduct by violating the Court's preliminary rulings on Cole's invocation of the Fifth Amendment and the grand jury's determination of probable cause. The record also fails to demonstrate the purported misconduct prevented Plaintiff from fully and fairly presenting his case at trial. His objection on the matter is DENIED.

Regarding Cole's argument that defense counsel violated the Court's preliminary ruling excluding evidence of his underlying guilt or innocence during the liability phase of trial, the Court finds he misinterprets its ruling on the issue. The Court explained, "Plaintiff will not be allowed to testify that he was found innocent of the underlying charges by the Illinois Appellate Court. However, Plaintiff may testify that he is innocent, and he was wrongfully prosecuted and convicted." (Minute Entry 04/10/2019.) Cole creatively interprets the Court's ruling to infer that since he was not allowed to testify he was exonerated by the Illinois Appellate Court, Meeks was not permitted to cross-examine he and his wife as to what happened in their home while they babysat the victim. (D. 164 at 16-18.) Cole's argument requires the Court to make an inference where no logical connection can be made. Plaintiff also conspicuously omits the fact he failed to object to all of the alleged incidents of misconduct during trial. Accordingly, his objection on the issue is waived and his motion on this ground is DENIED.

Cole concludes the misconduct section of his Motion by arguing Meeks violated the Court's preliminary ruling barring reference to the offer by the victim's mother to take a polygraph examination during the investigation. Prior to trial, Cole submitted a motion *in limine* titled "Bar Reference to Polygraph Examinations," which argued:

> [Plaintiff] was given a polygraph examination prior to the trial and it appears that Defendant seeks to refer to that polygraph as indicative of deception at the trial. Such evidence should be barred . . . . Further, admission of Defendant's interpretation of the polygraph results does not address the issue of probable cause in this case. Defendant Meeks initiated the prosecution prior to the polygraph examination. In fact, Defendant Meeks testified at his deposition that he was unaware of whether Steven Cole took a polygraph examination. For these reasons, any reference to polygraph examinations should be barred.

(D. 106 at 9-10.) Noticeably absent from Cole's motion was reference to the polygraph examination the victim's mother offered to take during the investigation of the injury to her child. Cole inserted the issue at the pretrial hearing, arguing:

> With regard to two witnesses. The first one, [the victim's mother]. In the response, the Defendants state that one of the reasons they want to get in the polygraph -- I suppose in the liability phase -- is because Detective Meeks decided that [the victim's mother] was not involved in harming the child because she agreed to take a polygraph.

(D. 146 at 97:16-22.) Defense counsel went on to concede:

> We don't have a problem with [the victim's mother] saying, "I agreed to take a polygraph," that's fine. But then a law enforcement officer considering that as proof of her innocence is overly prejudicial. That the jury might think that a polygraph has more weight than it does in a court of law.

*Id.* at 100:11-17. After considering the arguments on the issue, the Court ruled:

> I will allow [the mother] to testify that she offered to take a polygraph. I will allow [Meeks] to say that he -- based on [the mother's] cooperation, didn't see her as a serious suspect. I don't want him to specifically say that he relied on her agreeing to take a polygraph.

*Id.* at 101:8-13. The Court codified its ruling on the case docket, which read:

> Plaintiff's Motion in Limine #13 is GRANTED IN PART AND DENIED IN PART. [The victim's mother] will be allowed to testify that she offered to take a polygraph examination. Defendant Meeks will be allowed to testify that, based on [her] cooperation, he did not consider her as a serious suspect. However, Defendant Meeks will not be allowed to testify that he relied on her offer to take a polygraph as indicative of her innocence.

Minute Entry 04/10/2019.

> Plaintiff now argues,

> The Court granted Plaintiff's Motion . . . to bar *any* reference to polygraph examinations.  Despite the Court's ruling, the Defense violated that order in Defendant Meeks's testimony when he referenced [the mother's] willingness to take a polygraph . . . Plaintiff's counsel objected and asked for a sidebar . . . The Court struck Defendant's testimony about [her] "willingness to take a polygraph" . . . This violated the Court's order on Motion in Limine #13 and created prejudicial error.

(D. 164 at 18) (emphasis added).  Despite Cole's argument to the contrary, however, the record demonstrates his argument lacks justification. At trial, the following interaction occurred between defense counsel and Meeks:

> Q. Do you remember how you set that interview up?

> A. I had [the victim's mother] come to the police department.

> Q. Why did you want her to come to the police department?

> A. I was bothered by the things that she said so I just wanted it to be there.

> Q. Okay. And so tell me about that interview as best you recall it.

> A. There were several issues that I had with that, one being the text as well as the issue that McCubbins had just informed us. So, I mean, it was an interview that lasted about an hour and a half. I probably wasn't -- the first time I would talk to her, like everyone else, I was probably sickeningly nice. On this one, I probably was not -- I mean, I wasn't aggressive or mean to her, but I was a little more assertive in this one. Like I said, we talked to her for about an hour and a half. When we actually got done with the interview, I recall we walked out of the room, and it was -- I just -- she was offering to take the polygraph even -- we use the polygraph as an example a lot of times to determine whether somebody's being honest. But some people just have a hard time even lying about talking about a polygraph. And that's worked very well. I did this with her. She was very willing

to take a polygraph. And when I came out of the room, it just felt like she had told us the truth on all these issues[.]

(D. 161 at 287:1-288:9.) Defense counsel objected to his testimony, and the following conversation took place during sidebar:

Defense Counsel #1: Your Honor, I believe that the motion in limine was that [the victim's mother] could say, I agreed to take a polygraph.

Defense Counsel #2: Right.

Defense Counsel #1: But this witness was barred from saying he factored that into her credibility. Now we've got the jury thinking a polygraph adds to her credibility from a law enforcement agent.

THE COURT: Honestly, at this point I don't remember.

Plaintiff's Counsel: I don't recall him saying that he factored it in. I think he was allowed to say that she offered to take a polygraph, and I'm moving beyond it right now.

Defense Counsel #1: But I, I think -- if the court reporter could read it back, I think the limine motion has been violated. I will represent I do remember -- and this is a violation of the motion in limine. I'm not saying anything about [counsel], but he said we -- I -- that -- the witness has just testified, I believe, that made her sound credible.

THE COURT: Let's start with this. Does everyone agree that I said that it couldn't be used by -- in his testimony to -- by him to say that he factored that into probable cause?

Plaintiff's Counsel: I think you did say that.

THE COURT: Okay. Then the second -- then the second thing is, What do we do about it now? I think he did basically -- I think he didn't come out and exactly say that, but --

Plaintiff's Counsel: So, I thought he was skirting on the edge of that, so I wanted to move him past it. And that's what I was planning on doing right now.

Defense Counsel #2: Could we move to strike that or tell them to disregard that?

THE COURT: I can say to the jury that his reference to a willingness to take the polygraph, that that portion of his testimony is stricken, and they should not consider it.

Defense Counsel #2: Okay.

Plaintiff's Counsel: Understood, Judge.

(D. 161 at 288:15-290:5.)  At the end of sidebar, the jury was instructed that the Court was striking the portion of the witness' testimony about her willingness to take a polygraph and that they were not to consider it.  *Id.* at 290:8-11.

As the record demonstrates, defense counsel did not violate the Court's preliminary ruling when Meeks testified that based on the cooperation of the victim's mother, including her offer to take a polygraph, he did not consider her a serious suspect.  Additionally, any potential prejudice to Cole as a result of the testimony was mitigated by the Court's action striking the comment and instructing the jury not to consider it.  Finally, Meeks' testimony did not prevent Cole from fully and fairly presenting his case at trial, including attempting to impeach Meeks on the credibility of the victim's mother (*id.* at 329:18-335), and attempting to directly impeach the victim's mother on direct examination, (D. 161 at 126:21-23).  Accordingly, his Motion for New Trial on this ground of purported misconduct fails and his argument is DENIED.

**Plaintiff's Motion for Leave to File Reply**

On July 17, 2019, fifteen days after Defendant filed his response to Plaintiff's Combined Motion, Plaintiff filed his Motion for Leave to File Reply and attached his reply.  (D. 178.)  In his Motion, Plaintiff states he believes his reply "is necessary to respond to several legal arguments and factual assertions raised by Defendants in their [r]esponse and will aid the Court in deciding Plaintiff's Motion."  *Id.* at 2.  The Local Rules of this District dictate that "[n]o reply to the response is permitted without leave of Court."  CDIL-LR 7.1(B)(3).

The Seventh Circuit has ruled that the decision to grant or deny a motion for leave to file a surreply is within the discretion of the Court.  *Johnny Blastoff, Inc. v. L.A. Rams Football, Co.*,

188 F.3d 427, 439 (7th Cir. 1999). Denial of a motion to file a surreply is appropriate "when the movant has had the opportunity to thoroughly brief the issues," *Univ. Healthsystem Consortium v. UnitedHealth Grp., Inc*., 68 F. Supp. 3d 917, 922 (N.D. Ill. 2014); and there is no need for a surreply when "[e]ach brief in the sequence on the motion fairly responded to the arguments in the brief that preceded it." *Franek v. Walmart Stores, Inc*., 2009 WL 674269, at *19 n.14 (N.D. Ill. Mar. 13, 2009). Typically, the Court does not allow the moving party to file a reply in order to introduce new arguments that could have been included in the motion itself, or to rehash arguments made in the motion. *Shefts v. Petrakis*, No. 10-cv-1104, 2011 WL 5930469, at *8 (C.D. Ill. Nov. 29, 2011).

The Court finds Plaintiff has had more than ample opportunity to thoroughly brief the issues. It also finds his reply attempts to introduce new arguments and evidence that could have been included in his original motion (e.g., the forfeiture of judgment as a matter of law, viewing the evidence in the light most favorable to the prevailing party when evaluating a Rule 59 motion, plain error review), and that he rehashes the same arguments he initially included in his request for post-trial relief (e.g., the exclusion of Dr. Burgess was in error, trial bifurcation was in error, etc.). Accordingly, Plaintiff's Motion for Leave to File Reply is DENIED.

## **CONCLUSION**

For the reasons stated herein, Plaintiff's [164] Combined Motion for Judgment as a Matter of Law and Motion for New Trial and [178] Motion for Leave to File Reply are DENIED. This case remains CLOSED.

ENTERED this 24th day of September 2019.

/s/ Michael M. Mihm
Michael M. Mihm
United States District Judge